**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| PEARL REAGOR, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case No. 12-CV-154-JHP |
| | ) |
| OKMULGEE COUNTY FAMILY | ) |
| RESOURCE CENTER, INC., | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Before the Court are Defendant Okmulgee County Resource Center Inc.'s (OCFRC) Motion to Dismiss,[1] Plaintiff's Response to Okmulgee County Resource Center Inc.'s Motion to Dismiss,[2] and Defendant's Reply Supporting Okmulgee County Resource Center Inc.'s Motion to Dismiss.[3] For the reasons discussed below, Defendant's Motion is **GRANTED IN PART, DENIED IN PART**.

## BACKGROUND

Plaintiff Pearl Reagor, an African-American female over 40 years of age, was employed as an intake worker at a shelter run by OCFRC.[4] On December 15, 2010, Plaintiff filed a Charge of Discrimination with the EEOC alleging race and age discrimination.[5] On the formal charge sheet,

---

[1] Docket No. 6.

[2] Docket No. 10.

[3] Docket No. 11.

[4] Petition at 2, Docket No. 2-1.

[5] Motion at 1, Docket No. 6.

1

Plaintiff indicated one discriminatory act: that Defendant had denied Plaintiff a desirable shift in favor of a younger, white employee.[6] Upon verifying her EEOC Charge, Plaintiff also included an Amendment that cited two other instances of alleged discrimination: (1) an incident where a younger, white employee was either not disciplined or "protected" despite having job performance issues ostensibly similar to that of Plaintiff; and (2) an allegation that Plaintiff was dropped from employee health insurance, while other, white employees were not.[7] On November 8, 2011, Plaintiff received a right to sue letter from the EEOC, and on February 6, 2012 Plaintiff filed suit in Okmulgee County District Court.[8] The action was timely removed to this Court by Defendant on April 6, 2012, and Defendant filed the instant Motion to Dismiss on April 14, 2012.[9] The Motion is fully briefed and before the Court.

## DISCUSSION

To survive Defendant's motion to dismiss, Plaintiff's complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[10] "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."[11] The *Twombly/Iqbal* standard *does not* require heightened fact pleading or that a plaintiff establish a *prima facie* case in his Complaint,

---

[6] EEOC Charge at 1 Docket No. 10-1.

[7] Response at 7-8, Docket No. 10.

[8] Motion at 3, Docket No. 6.

[9] Docket No. 6.

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[11] *Iqbal*, 556 U.S. at 678.

merely that the facts alleged nudge a plaintiff's claims across the line from conceivable to plausible.[12]

A claim has facial plausibility when the pleaded facts, accepted as true, allow the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[13] Plausibility is not a watchword for probability. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."[14] Ultimately, Federal Rule of Civil Procedure 8 requires only that the Petition or Complaint give the defendant fair notice of the substance of plaintiff's claim and the grounds upon which it rests."[15]

Defendant moves to dismiss Plaintiff's Petition as a whole pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendant makes specific arguments (1) that Plaintiff has failed to exhaust administrative remedies with regard to certain claims; (2) that Plaintiff's Petition does not allege sufficient facts to indicate relief is plausible; and (3) that Plaintiff has failed to allege facts sufficient to support a claim for Intentional Infliction of Emotional Distress. The court addresses each of these arguments in turn.

**A. Failure to Exhaust**

The Court first looks to Defendant's allegation that Plaintiff has failed to exhaust her

---

[12]*See Khalik v. United Air Lines*, 671 F.3d 1188, 1191-92 (10th Cir.2012).

[13]*Jordan–Arapahoe, LLP v. Bd. of Cnty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir.2011).

[14]*See Twombly*, 550 U.S. at 556 (*internal quotation omitted*).

[15]*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (*internal quotation omitted*).

administrative remedies with regard to certain allegations.[16] Defendant specifically contends that Plaintiff has failed to exhaust her administrative remedies with respect to her allegations that "Defendant treated another White [sic] employee, Marlene Covington, more favorable [sic] than Plaintiff when she was having difficulty operating the computer software used in Defendant's shelter" and "Plaintiff was dropped from Defendant's employee health insurance plan, while other White [sic] employees were allowed to stay on the plan."[17]

It is true that "[a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC."[18] However, the Court liberally construes charges filed with the EEOC in determining whether administrative remedies have been exhausted as to any particular claim.[19] "This more lenient pleading standard contemplates the fact that administrative charges of unlawful employment practices are regularly filled out by employees who do not have the benefit of counsel."[20] This obligation to liberally construe EEOC filings requires the Court to look beyond the formalities of the complaint form and to its supporting documentation.[21]

Plaintiff contends that although her formal EEOC Charge only cites the shift change dispute, Plaintiff offered a handwritten amendment to this Charge when she signed and verified the accuracy

---

[16] Motion at 9, Docket No. 6.

[17] *See* Petition at 3, Docket No. 2-1.

[18] *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1274 (10th Cir.2005).

[19] *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1186 (10th Cir.2007).

[20] *Mitchell v. City and County of Denver*, 112 Fed.Appx. 662, 667 (10th Cir.2004).

[21] *Noland v. City of Albuquerque*, 779 F.Supp.2d 1214, 1223 (10th Cir.2011).

4

of her claim.[22] In this Amendment, Plaintiff included her allegation regarding disparate treatment as compared to Marlene Covington and her allegation regarding the termination of her insurance.[23] Defendant does not dispute the contents of this Amendment in its Reply, nor does Defendant's Reply offer any further argument on the exhaustion issue. Absent any argument from Defendant, the Court considers the proffered Amendment as part of the materials considered by the EEOC in its investigation of Plaintiff's Charge. Consequently, the Court finds Plaintiff has exhausted her administrative remedies with respect to these allegations.

**B. Failure to State a Claim**

Defendant further alleges that even if Plaintiff's administrative remedies have been exhausted, Plaintiff's Petition still fails to state a claim upon which relief is plausible. Defendant attacks all of Plaintiff's allegations and makes specific arguments that Plaintiff has failed to fairly allege an "adverse employment action" for the purposes of Title VII, §1981, or the ADEA and has failed to plead facts indicating racial animus to support her §1981 claim.[24] As all of Plaintiff's allegations are properly before the Court, the Court examines each one in turn, as well as Defendant's arguments, to determine which, if any, of Plaintiff's factual allegations may support the plausibility of Plaintiff's discrimination claims.

Looking first to Plaintiff's allegation "Defendant treated another White [sic] employee, Marlene Covington, more favorable [sic] than Plaintiff when she was having difficulty operating the computer software used in Defendant's shelter." Although allegations of disparate treatment can

---

[22]Response at 7, Docket No. 10.

[23]*Id. See also* Amendment at 2, Docket No. 10-1.

[24]*See* Motion at 7, 11, Docket No. 6.

5

support an actionable claim, here Plaintiff offers no facts that purport to show how Marlene Covington was treated differently or more favorably than Plaintiff. Plaintiff offers only the bald assertion that Ms. Covington was treated "more favorable." Based on this assertion alone, Defendant is not on notice of who among Defendant's employees perpetrated this alleged disparate treatment, what the alleged disparate treatment consisted of, or when this disparate treatment allegedly occurred. Standing alone, this allegation of discrimination is insufficient to meet the simple notice requirements of Rule 8 and certainly fails to carry Plaintiff's claims over the plausibility hurdle set by *Twombly and Iqbal*.

Even looking outside the four corners of Plaintiff's Petition to the broader factual statement regarding this incident contained in Plaintiff's Amendment to her EEOC Charge, Plaintiff's allegation regarding this incident fails to provide adequate notice of the alleged wrongdoing as required by Rule 8. In her handwritten Amendment, Plaintiff states that Ms. Covington was "treated better than I was when she was having problems operating the computer soft ware [sic]."[25] Plaintiff goes on to state that "some other staff was [sic] complaining about her not being able to do her job, and Richard Davidson, our Director, protected her."[26] This factual allegation gives no information regarding how Plaintiff was treated, only that Ms. Covington was treated "better."

Further, the only reference to any treatment, disparate or otherwise, is the allegation that Director Davidson "protected" Ms. Covington from employee complaints. Although the narrative in the EEOC Amendment offers some exposition on the events in question, as a factual allegation, Plaintiff's recitation of this incident still fails to state how Plaintiff was treated disparately, only that

---

[25]*See* Amendment at 2, Docket No. 10-1.

[26]*Id.*

6

she was. Such conclusory allegations are insufficient to meet the requirements of Rule 8.[27]

Similarly, Plaintiff's allegation that "Plaintiff experienced disparate treatment compared to her white coworkers with regard to job assignments, discipline and promotions" offers only a conclusory "they harmed me" assertion for which she offers little supporting factual averment. Aside from the denial of Plaintiff's requested shift change, Plaintiff offers no specific instances in which she was subjected to disparate discipline or passed over for promotion or favorable job assignments. At best, this allegation is a rote recitation of one element of a Title VII claim, rather than a well-pled fact. As such, it is insufficient to support Plaintiff's claims.[28]

However, other allegations provide factual support for Plaintiff's claims. For example, the allegation "Plaintiff was dropped from Defendant's employee health insurance plan, while other White [sic] employees were allowed to stay on the plan," taken as true, supports a plausible claim for relief.[29] Although evidence outside the pleadings indicates Defendant has a defense to this allegation, such evidence is not appropriately considered at this stage of the litigation. As such, this allegation weighs heavily against granting Defendant's Motion to Dismiss.

Plaintiff's remaining allegation, that she was denied a change in shift in favor of a younger, white employee, similarly weighs against granting Defendant's Motion to Dismiss. Defendant asserts that this allegation fails to state a viable claim for disparate treatment because the allegation that Defendant denied Plaintiff a shift change in favor of a younger, white employee does not

---

[27]*See Iqbal*, 129 U.S. at 1950.

[28]*Id.* (concluding "threadbare recitals" of elements insufficient to sustain a claim).

[29]Petition at 3, Docket No. 2-1.

7

amount to an "adverse employment action."[30] Defendant specifically states that, as Plaintiff fails to plead facts supporting that this was an "adverse employment action," she fails to make a *prima facie* showing under Title VII or the ADEA, and without such a showing Plaintiff's Petition ultimately fails to allege facts for which relief is plausible.[31]

The Supreme Court has specifically rejected Defendant's position on this issue. In *Swierkiewicz v. Sorema North America,* the Supreme Court plainly stated that the *McDonnell Douglas prima facie* standard is "an evidentiary standard, not a pleading requirement."[32] The Supreme Court explicitly acknowledged the continuing applicability of the *Swierkiewicz* decision in employment actions while illuminating pleading standards in *Twombly*.[33] Consequently, Defendant's invocation of a *prima facie* pleading standard in this case is in error. Notice pleading standards merely require that Plaintiff's Petition or Complaint "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[34]

Here Plaintiff's allegation that she was denied a shift change in favor of granting that shift to a younger, white employee is sufficient to give notice of Plaintiff's claim. Although there may remain legal argument as to whether this allegation rises to the level of an "adverse employment action," such arguments are more appropriately raised on a motion for summary judgment after the

---

[30]Motion at 7, Docket No. 6.

[31]*Id.*

[32]*Swierkiewicz*, 534 U.S. at 510.

[33]*See Twombly*, 550 U.S. at 569–70 (explaining that *Swierkiewcz* is consistent with the Supreme Court's rationale in *Twombly*).

[34]*Swierkiewicz*, 534 U.S. at 513.

completion of discovery and more thorough briefing on the adverse nature of the action.[35]

The Court reiterates that the issue on a Motion to Dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[36] Nothing in Rule 8's liberal pleading standards requires a plaintiff to prove every facet of his or her case at the pleading stage.[37] Further, the Court can find no support for Defendant's apparent contention that Plaintiff was required to explicitly state that the cited denial "was an adverse employment action."[38] Notice pleading standards require no precise, elemental incantation, only a short, plain statement describing the cause of action and the facts underlying it.[39] Here, Plaintiff's Petition has given Defendant appropriate notice of each of Plaintiff's claims and the alleged adverse employment actions upon which they are premised. Regardless of this Court's opinion of the claims' ultimate viability, Plaintiff is entitled to muster and present evidence that Defendant denying

---

[35]*Id.* at 511-12 (holding because discovery may yield direct evidence of discrimination, holding plaintiffs to a *prima facie* standard would require them to plead more facts than ultimately necessary to succeed on the merits). *Cf. Gross v. City of Chicago*, 2005 WL 1866041, *3 (N.D.Ill.2005) ("The refusal by Defendants to assign Gross to the day shift might constitute an adverse employment action and it might not. However, in order to resolve that issue and determine whether or not Defendants took an adverse employment action against Gross, we would have to enter into an inquiry into the facts and evidence in this case which is well beyond the scope of the complaint and the scope of a motion to dismiss").

[36]*Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir.2003).

[37]*See Swierkiewicz*, 534 U.S. at 511 ("[U]nder a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a *prima facie* case because the *McDonnell Douglas* framework does not apply in every employment discrimination case. For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a *prima facie* case").

[38]*See* Reply at 5, n.2, Docket No. 11 ("Although Plaintiff cites page 3 of her *Petition* in support of the suggestion that her *Petition* expressly alleges that the denial of a shift transfer "was an adverse employment action," the cited page contains no such allegation").

[39]*See Twombly*, 550 U.S. at 555.

Plaintiff a shift change was somehow a materially adverse employment action.[40]

Similarly infirm is Defendant's contention that Plaintiff's §1981 claim should be dismissed because Plaintiff's complaint fails to "include facts from which racial animus or disparate treatment can be inferred."[41] This represents another attempt by Defendant to improperly impose *prima facie* requirements at the pleading stage. Defendant's primary support for this position, *Richardson v. Security Unit Employees Council 82*, relies on the Second Circuit decision in *Yusuf v. Vassar College*.[42] District courts in the Second Circuit have recognized that the *prima facie* pleading requirement announced by *Yusef* and its progeny has been implicitly overruled by the Supreme Court's ruling in *Swierkiewicz*.[43] As noted above, this Court concurs with that assessment, and Plaintiff's failure to plead specific instances of racial animus has no bearing on the plausibility of Plaintiff's claim.

---

[40]*See id*. at 556 (*internal quotation omitted*). *See also Swierkiewicz*, 534 U.S. at 511. *But see, Arteta v. County of Orange*, 141 Fed.Appx. 3, *6 (2nd Cir.2005) ("This is not a case in which discovery might enable the plaintiffs to state more specific allegations. The plaintiffs themselves, who were in a position to know and allege how they were adversely affected by their transfers, failed to allege adverse employment actions") (*citing Swierkiewicz*, 534 U.S. at 511-12).

[41]*See* Motion at 13, Docket No. 6 (*citing Richardson v. Security Unit Employees Council 82*, 2001 WL 392089, *4 (W.D.N.Y 2001).

[42]*Richardson*, 2001 WL 392089 at *4 ("As the Second Circuit Court of Appeals noted in *Yusuf*, 'the abundance of other possible reasons for the [defendants'] decision combined with the lack of any specific factual support for [her] claim of a racial motivation illustrates that [her] claim here is simply a 'naked allegation' of racial discrimination'") (*quoting Yusef*, 35 F.3d 709, 714 (2d Cir.1994)).

[43]*See Goldvekht v. United Federation of Teachers*, 2009 WL 129495, *3 (E.D.N.Y January 20, 2009) ("The most glaring problem with this standard is its complete disregard of recent Rule 12(b)(6) jurisprudence. Second Circuit cases such as *Yusuf*, which require a plaintiff to plead a *prima facie* case of discrimination in order to survive a motion to dismiss, were effectively overruled in *Swierkiewicz v. Sorema N.A*.").

In sum, although the Court finds that some of Plaintiff's factual allegations purportedly supporting her claims of discrimination are mere conclusions insufficient to push Plaintiff's claims across the line of plausibility, Plaintiff's Petition ultimately contains enough factual allegations to survive Defendant's Motion to Dismiss. By alleging that a younger, white employee received a favorable shift rather than Plaintiff and by alleging that Plaintiff's insurance was terminated while the insurance of white employees was not, Plaintiff has pled at least some facts supporting an inference that both race and age were a factor in Defendant's employment decisions. These allegations, taken as true, offer minimal factual support sufficient to render plausible her claims for age and race discrimination pursuant to Title VII, §1981, and the ADEA. Defendant's Motion to Dismiss these claims is **DENIED.**

## C. IIED

Looking to Plaintiff's claim for IIED, to the extent Plaintiff has fairly alleged discriminatory conduct by Defendant, the Court specifically finds that none of that alleged conduct rises to the level of "outrageousness" required to support an IIED claim under Oklahoma law.[44] As such, Defendant's Motion with respect to Plaintiff's IIED claim is **GRANTED**, Plaintiff's claim for IIED is properly **DISMISSED**.

---

[44]*See Trentadue v. United States*, 397 F.3d 840, 856, n.7 (10th Cir. 2005)(*applying Oklahoma law*) (noting it is trial court's responsibility to initially determine whether defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous). *See also Gabler v. Holder & Smith, Inc.,* 2000 OK CIV APP 107, ¶64, 11 P.3d 1269, 1280 (noting that employment related facts rarely rise to a level of extreme and outrageous conduct).

## CONCLUSION

For the reasons cited above, Defendant's Motion to Dismiss is **GRANTED IN PART, DENIED IN PART**.[45]

**IT IS SO ORDERED** this 17th day of September, 2012.

*[signature]*
James H. Payne
United States District Judge
Eastern District of Oklahoma

---

[45] Docket No. 6.